[No. 20431. Department One. August 16, 1927.]

THE STATE OF WASHINGTON, *Respondent,* v. FRANK POLET, *Appellant.*[1]

[1] FALSE PRETENSES (16)—FRAUDULENT DEVICES—EVIDENCE—SUFFICIENCY. Accused's conviction of obtaining money by the fraudulent device of holding himself out as able to perform the usual functions of a broker and financial agent when, in fact, he was hopelessly insolvent, and by appropriating the property obtained thereby to his own use, is not sustained by evidence to the effect that accused had conducted a business partaking of the nature of banking, and used and appropriated money intrusted to him as a trustee of an express trust, so that he would be guilty of embezzlement; there being no proof of false representations or that he was insolvent or conducted his business with intent to defraud.

[2] EVIDENCE (68) — BEST AND SECONDARY EVIDENCE — FACTS EVIDENCED BY WRITINGS. Oral proof of facts within the knowledge

[1]Reported in 258 Pac. 501.

of the witness is not inadmissible because the transaction may
be recorded in books of account or other writings, which are
merely the best evidence of what they contain, and not of the
fact recorded.

Appeal from a judgment of the superior court for
King county, Hawkins, J., entered December 18, 1925,
upon a trial and conviction of grand larceny. Re-
versed.

*Hugh M. Caldwell* and *John P. Lycette*, for appel-
lant.

*Ewing D. Colvin* and *Cordelia M. Thiel*, for re-
spondent.

FULLERTON, J.—By an information filed in the su-
perior court for King county, the appellant, Frank
Polet, was charged jointly with one Joe Lucenti of
violating the second subdivision of § 2601 of the code
(Rem. Comp. Stat.) [P. C. § 8944]. The specific charge
was that the defendants, on and prior to January 16,
1925, conducted and maintained in the county of King
a fraudulent device for the purpose of obtaining money
and property, and of defrauding the public generally
of such money and property, by holding themselves
out, while hopelessly insolvent, as being able, ready and
willing to perform the usual functions of brokers and
financial agents, with intent not to fulfill their con-
tracts as such brokers and agents, but to appropriate
the money and property obtained by means of such
representations to their own use. It is further charged
that, upon the specific date given, they did, by means
of such false and fraudulent representations, obtain
from one Louis Kastenmeyer checks of the value of
$1,857, the property of Kastenmeyer, the proceeds of
which they subsequently appropriated to their own
use.

The defendants were tried jointly upon the charge before a jury, who returned a verdict of guilty against Polet and a verdict of not guilty in favor of Lucenti. On the return of the verdict, Lucenti was discharged. Later on, after a denial of his motions in arrest of judgment and for a new trial, Polet was adjudged guilty upon the verdict, and sentenced to a term in the penitentiary of not less than two nor more than fifteen years.

The business which the appellant was conducting, charged to be a fraudulent device for obtaining the money and property of others, was originally established by one F. Buty, who conducted it under the name of F. Buty & Co. The appellant Polet early entered his employment, and sometime in the year 1919, purchased an interest therein, paying Buty $4,000 for the interest purchased. The business was conducted under the old name by both Buty and the appellant until January, 1924, at which time the appellant purchased Buty's remaining interest, paying him $9,000 therefor. From thence on, until the business was closed in February, 1925, the appellant conducted the business as sole proprietor, under the name of F. Polet & Co.

The place of business was fitted out much like that of an ordinary bank. It had a vault with safes for the safe keeping of valuables. There were a number of safety deposit boxes which the appellant rented, and which could be opened only by a master key kept by the proprietor and special keys given to the hirers of the boxes; and over the counters, where the business with the public was transacted, were "wire wickets like those of an ordinary bank."

The business was varied in its nature. Aside from the money and valuables kept in the safety deposit

boxes, large sums were taken over the counter for safe keeping; money was received from customers and transmitted to individuals in foreign countries; deposits in foreign banks were brought to the appellant's place of business; steamship tickets and foreign exchange were sold to customers who desired the services; various forms of insurance were sold, and small loans were made on collateral security. Customers making deposits for safe keeping were permitted to withdraw them at their will, either in whole or in part. While separate accounts were kept on the appellant's books of each individual transaction, the moneys received were not kept separate from his general account. All moneys received, from whatsoever source, were either kept in the vault at his place of business or deposited to the account of Polet & Co. with banking institutions. The principal deposits were kept with banks at Seattle. A deposit, however, was kept at a New York bank, and deposits were kept with certain banks in the countries of Europe.

The business transacted was large. While the record does not show in a tabulated form the amount of business transacted through the New York bank, the European banks, or over the counter at the appellant's place of business, it does show the business transacted through the Seattle banks. This item alone shows that, during the year and month that the appellant conducted the business on his own account, he deposited, to the account of Polet & Co. with these banks, sums totaling $1,245,000.

As we gather from the record, the immediate cause of the appellant's failure arose out of a transaction with a concern called in the record the Bagdad Cafe. The record is somewhat meager concerning the transaction, but enough appears to show that certain per-

sons fitted up a place in the city of Seattle to be oper-
ated as a restaurant under that name. The appellant
advanced to them a considerable sum of money for
the purpose. When the place was completed and ready
to be opened for business, as its proprietors thought,
the health officers of the city intervened and refused
to allow the place to be operated as a restaurant with-
out extensive changes amounting to an entire remodel-
ing of the structure. The appellant, apparently with
the idea of protecting his prior advancements, ad-
vanced the money necessary to pay the cost of re-
modeling the building, the total advancements made
by him towards fitting up the cafe approximating
$25,000. There were, during the period of these ad-
vancements, unusually large withdrawals from the safe
keeping deposits. The record does not disclose the
reason for these excessive withdrawals, but it would
seem that it could hardly have been because of dis-
trust in his business methods. The business went on
in the usual manner, and all demands upon the busi-
ness were met when made, up to within a short time
prior to the time the business was closed by the ap-
pointment of a receiver in an action in court instituted
for that purpose.

The Kastenmeyer transaction, specifically set out in
the information, was but one of many of a similar sort.
Kastenmeyer had on deposit in banks in the state of
Wyoming sums aggregating the amount stated in the
information, subject to be withdrawn by check in the
usual manner. He desired to transfer the money to
Seattle, and appeared at the appellant's place of busi-
ness to have the transfer made. He was waited upon
by an employee of the appellant. Checks were drawn
on the several banks in favor of F. Polet & Co. for the
amount of the deposits and signed by Kastenmeyer.

He was given receipts showing the transaction, and entries of it were made upon the appellant's books. Later on in the day, the checks were endorsed with the name of F. Polet & Co. by the bookkeeper of the appellant and taken to the depositary bank of the appellant, with the cash receipts of the day, and deposited with the bank. The banking officials treated the checks as cash, and credited the cash account of F. Polet & Co. with the face value of the checks. One of the checks subsequently proved to be drawn for too large an amount, and was returned unpaid to the depositary bank. Kastenmeyer was notified of the fact and gave a new check for the actual amount of the deposit. The receipt given him was corrected so as to show the actual sum due him, and corresponding entries were made in the appellant's books. When Kastenmeyer demanded payment of the deposit, the appellant was not able to meet the obligation, and this, with his inability to meet the demands of certain others of his depositors, seems to have precipitated the action which resulted in the closing of the business.

The state, to prove the insolvency of the respondent, produced an accountant who had audited the appellant's books. This witness testified that his audit showed that, on January 16, 1925, the date of the Kastenmeyer transaction, the books disclosed assets in the sum of $67,542.39, and liabilities in the sum of $75,214.81. The appellant's bookkeeper also testified for the state to the effect that it was his custom to furnish the appellant with a statement of his cash account at the end of each month, and that the November or December statement in 1924, his memory was uncertain as to which month it was, showed an excess of cash liabilities over the cash assets of approximately $20,000. The state further showed, a fact here-

inbefore mentioned, that a receiver was appointed to take over the business because of the appellant's insolvency.

To prove the charge that the appellant was conducting a "fraudulent device for the purpose of obtaining money and property, and defrauding the public generally of said money and property," it showed the nature of the appellant's business, introducing for this purpose practically all, if not all, of the appellant's books of account; showed the Kastenmeyer transaction; and further showed some eight other instances where individuals had money on deposit with appellant for which he had not accounted; the total aggregating approximately $8,000. There was no evidence of falsification in the books of account; on the contrary, the state's proof showed that he kept in his employ a competent bookkeeper, that each separate transaction was carefully noted therein, and that the books, at all times, accurately reflected the condition of the business. Nor was there any evidence of false representations made to induce persons to leave their money and other valuables with the appellant. With reference to the Kastenmeyer transaction, the evidence is that the appellant did not know of it until after it was completed. It appeared, moreover, that certain of the other depositors whose deposits were not refunded, made the deposits when the business was conducted by F. Buty & Co., and were charges against the appellant because he assumed them when he took over the business from that company. As to certain of them, it appeared, also, that no demand for repayment was made until after the business went in the hands of the receiver.

The record does not disclose the items of debits and credits which the state's expert accountant took into

consideration in making up his statement of the appellant's assets and liabilities, but that his statement was not strictly accurate the subsequent evidence disclosed. He did not take into consideration the deposits the appellant had with the European banks, yet the receiver collected sums from that source aggregating $3,497.10. He did not take into consideration the value of the investment in the Bagdad Cafe, yet the appellant offered to show by his bookkeeper that he took over, as security for his advancements to it, the entire capital stock of the concern, and that the stock had value. He. did not take into consideration an interest the appellant had in certain property in another city, yet the appellant offered to show that he had such an interest, and the value of that interest. With reference to the monthly statement of the bookkeeper furnished to the appellant, which showed a shortage in the cash on hand of some $20,000, the appellant sought to show by the bookkeeper that he, immediately after being shown the statement, procured from sources outside of his business the sum of $10,000, and put it in the bank under his business name of F. Polet & Co., and checked it out in payment of the demands of his depositors. He further offered to show by the same witness that, later on in the month, he procured an additional $3,000, deposited it in the same manner, and checked it out for the same purposes. The court refused to permit him to make the showing.

[1] The appellant has assigned numerous errors. These relate in the main to errors which, if sustained, would require a new trial. There were, however, at appropriate times during the course of the trial, challenges made to the sufficiency of the evidence to sustain a conviction, and the refusal of the court to sustain them has been assigned as error, and has been

preserved in the record for the consideration of this court.

It is our conclusion that some one or more of these challenges should have been sustained. The record shows, unquestionably, that the appellant was guilty of acts which the statutes of the state denounce as crimes. While the business of the appellant partook, in part, of the nature of the business usually performed by the regularly organized banks and banking institutions, his business was not a banking business, nor was he a banker. The same rules of law did not obtain in his favor that obtain in favor of the regularly organized banks. When money is deposited in a bank, the money becomes the property of the bank. The relation of debtor and creditor thereupon exists between the bank and the depositor. The bank may use the money for its own purposes; and, if it misuses the deposits and is unable to pay the debt due the depositor on his demand, neither the bank, nor its officers or trustees who have its management, is guilty of the crime of larceny or embezzlement.

It was not so with the appellant. When money was intrusted to him by his customers for whatever purpose, the money did not become his property, but remained at all times the property of the person who intrusted it to him, until it was disposed of according to the directions given him. The appellant became, with respect to the funds intrusted to him, a trustee of an express trust, and, since he failed to perform his trust undertaking by appropriating the money to his uses, he was guilty of the offense formerly denominated embezzlement, now called by the statute larceny. We do not mean here to say, that the appellant was guilty of an offense because he intermingled the money received from his several depositors, or intermingled

the money from his depositors with money of his own. Money has no ear marks. One dollar is not different from another dollar, where value is the consideration. So, the appellant was not guilty of an offense, if he was able to, and did, respond in kind. Nor was he guilty of an offense because, when he received money for transmission to a foreign country, he kept the money in his local deposit and directed the equivalent thereof to be paid to the person to whom it was agreed to be transmitted out of his deposits in the foreign country. So, when he was directed to bring money from a foreign county into this country, he could lawfully take an assignment of the money, leave it in the foreign country to his credit, and pay the person desiring the transfer from his local deposit.

But neither larceny, nor larceny by embezzlement, was the crime charged against the appellant. Epitomized, the charge is that the business conducted by the appellant was not legitimate, but was conducted as a fraudulent device to obtain the money and property of others; that he conducted it while hopelessly insolvent; that it was conducted with intent not to fulfill the contracts he entered into, but for the purpose of appropriating to his own use the money and property obtained by means of the purported contracts; that he did, by aid and color of the device, obtain the money and property of Kastenmeyer, and appropriated the money and property to his own use. It is our opinion that the evidence introduced at the trial falls far short of establishing these charges. That the court excluded testimony material to the controversy, we have hereinbefore indicated. The only proof of insolvency at the time of the Kastenmeyer transaction rests in the testimony of the expert accountant whom the state employed to audit the appellant's books. That his statement was inaccurate, we have hereinbe-

fore shown. It did not take into consideration the considerable deposits the appellant then had in foreign banks. It did not take into consideration other property of value which the appellant possessed. Had these been considered, it would have shown that he was not then "hopelessly insolvent," or insolvent in any degree. It is true, there was a subsequent adjudication of insolvency. But, in criminal causes, presumptions do not run backwards, and the subsequent adjudication was not proof of a prior insolvency. So with the exclusion of the evidence relating to his conduct and acts, when his bookkeeper informed him that his cash deposits were short of his cash liabilities. Certainly, if he at that time procured the considerable sum of $13,000, and deposited it to his account to meet the demands of his depositors, it tended strongly to show that he regarded his business as something more than a mere trick and device to obtain for his own use the money and property of others.

[2] The reason why this testimony was rejected is not clear to us from the record, but it can be gathered that the court rejected it because it thought that the evidence offered to substantiate the facts sought to be established was incompetent because not the best evidence; that it was thought that the evidences were recorded in writings of some sort, and that the writings were the best evidence. If, however, this was the ground for the rejection, the court mistook the applicable rule. Books of account and other writings are, of course, the best evidence of the matters which they contain; that is to say, when the question is what is contained in a particular writing, the writing itself is the best evidence of its contents. But when the question is as to the existence of a particular fact, the fact may be shown by any witness who has knowledge of it;

and merely because the transaction may be recorded in books of account or other writings does not make the record the best evidence of the fact. In this instance, the appellant offered to show the facts in question by persons who had knowledge of them, and it was error to exclude their testimony.

But, conceding that the foregoing are errors requiring a new trial only, and are not to be considered in viewing the testimony as to its sufficiency to sustain a conviction, we are still of the opinion that there was no evidence to prove the crime charged. The business the appellant conducted had been long established. During the time he was connected with it in partnership with another, it was honestly and legitimately conducted. It was so conducted for a long time after the appellant became the sole proprietor. If it was ever changed from an honest and legitimate business to a fraudulent scheme and device for the purpose of obtaining unlawfully the money and property of others, the change was made at about the time of the Kastenmeyer transaction. But we cannot conceive that any such change was then made. The evidence shows, it is true, that the appellant was guilty of a wrong; a wrong for which he may be punished under the criminal statutes, but it was not the wrong charged in the information. The appellant has been accused of one crime and convicted of another. This is not within the province of the state.

The cause is reversed, and the cause remanded with instructions to set aside the judgment of conviction and discharge the appellant.

Mackintosh, C. J., French, Main, and Mitchell, JJ., concur.